UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TOMMY J. McCLANAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:04-CV-350 |
| | ) | (VARLAN/SHIRLEY) |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b), Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's motion for summary judgment [Doc. 8] and defendant's motion for summary judgment. [Doc. 10]. Plaintiff Tommy J. McClanahan seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Commissioner.

The ALJ made the following findings:

> 1. The claimant, who met the insured status requirements of Title II of the Act on February 28, 1997, and through the date of this decision, has not engaged in substantial gainful activity since such alleged disability onset date.

2. The medical evidence establishes that the claimant has "severe" impairments as set forth in the body of this decision.

3. The claimant's organic brain dysfunction has met the criteria of section 12.02 of the Listing of Impairments, from July 27, 2001 and thereafter, but not prior thereto.

4. Prior to July 27, 2001, the medical evidence fails to establish that the claimant had impairment(s) satisfying the criteria of any section of the Listing of Impairments. His borderline intellectual functioning and depression imposed no more than "moderate" restriction of daily activities, or ability to maintain social functioning, or ability to sustain concentration, persistence, or pace. There were no repeated episodes of mental decompensation, and no showing of inability to function adequately outside of a highly supportive setting.

5. The claimant's subjective complaints of functional limitation are disproportionate to the medical evidence and are not fully credible for the period prior to July 27, 2001, considering both medical and "other" evidence of record. (20 C.F.R. §§ 404.1529 and 416.929).

6. From February 28, 1997 through July 26, 2001, the claimant had the residual functional capacity to perform light exertion, provided he perform no more than simple, unskilled tasks and perform no work requiring close interaction with co-workers or supervisors.

7. From February 28, 1997 through July 26, 2001, the claimant was unable to perform past relevant work.

8. From February 28, 1997 through July 26, 2001, the claimant was a "younger person."

9. The claimant has "marginal" literacy.

> 10. Based on an exertional capacity for light exertion and the claimant's age, education, and work history, 20 C.F.R. §§ 404.1569 and 416.969 and Medical-Vocational Guideline Rule 202.18 would direct a finding of "not disabled."
>
> 11. Although additional nonexertional limitations did not allow the claimant to perform the full range of light exertion, using the cited rule as a framework for decisionmaking, there were significant numbers of jobs in the regional and national economies that he could perform prior to July 27, 2001, examples of which are set forth in the body of this decision.
>
> 12. The claimant was under a "disability" as defined in the Social Security Act and Regulations, commencing July 27, 2001, but not prior thereto. (20 C.F.R. §§ 404.1520(d),(f) and 416.920(d),(f)).

(Tr. 277-78).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. 42 U.S.C. § 405(g). See Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004); Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. See Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); see also Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (held that in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet,

Case 3:04-cv-00350   Document 12   Filed 06/07/05   Page 3 of 10   PageID #: 25

823 F.2d at 920 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).

Plaintiff filed applications for disability insurance benefits and supplemental security income in December 1997, alleging disability beginning February 28, 1997 due to a back impairment. (Tr. 93-95, 102, 247-50). In a decision dated September 20, 1999, the ALJ found plaintiff was not disabled because he could perform jobs existing in significant numbers in the national economy. (Tr. 27-42). After the Appeals Council denied review, plaintiff appealed to the district court, and on March 22, 2001, this Court remanded plaintiff's case and instructed that a consultative neuropsychological evaluation be performed and a supplemental hearing be conducted. (Tr. 282-87). After the supplemental hearing and additional development of the case, the ALJ issued a partially favorable decision on February 20, 2002, finding that plaintiff was disabled as of July 27, 2001 because he met Listing 12.02. (Tr. 269-78).

Plaintiff contends that the ALJ erred by not finding that he was disabled before July 27, 2001. Therefore, the only issue on appeal is whether substantial evidence supports the ALJ's finding that plaintiff was not disabled from his onset date of February 28, 1997 through July 26, 2001 because he could perform a significant number of jobs. (Tr. 273-76). Because plaintiff challenges only the ALJ's assessment of his mental impairments during the relevant time period, only the medical evidence regarding his mental impairments will be discussed.

Plaintiff notes that the ALJ found that his impairments met the Listing 12.02, Organic Mental Disorders, as of July 27, 2001, the date of the report[1] from Dr. Miller, the neuropsychological examiner. (Tr. 558-69). The plaintiff points to the ALJ's statement that

> [a]lthough organic brain dysfunction has been diagnosed, the undersigned notes that the medical documentation thereof did not occur prior to Dr. Miller's report of July 27, 2001. Consequently, the medical evidence cannot support a finding that such impairment met the criteria of Listing 12.02 prior to such date.

(Tr. 273).

Plaintiff argues that the ALJ is incorrect in using the date of diagnosis as the date of onset because Social Security Ruling ("SSR") 83-20 instructs that the claimed onset date should be adopted if it is consistent with the evidence. Plaintiff contends that the ALJ called a medical advisor, psychologist Dr. Buckner, to the hearing to "infer" an onset date, but that the ALJ's decision does not mention important portions of Dr. Buckner's testimony. Plaintiff notes that Dr. Buckner testified that plaintiff's impairments met the listing requirements for Listing 12.02, Organic Mental Disorders (Tr. 626), and met the requirements of the listing for depression. (Tr. 625). With regard to plaintiff's depression, Dr. Buckner stated that plaintiff reported to Dr. Nevils in January 1999 that he had been depressed for the last one and one-half years, that he had some paranoia, and that he had attempted suicide "years ago," which Dr. Buckner stated he would consider decompensation/deterioration. (Tr. 633). Furthermore, plaintiff maintains that when Dr. Buckner was asked about plaintiff's onset date, he testified that he was unsure if plaintiff's organic brain

---

[1] Plaintiff notes that although the report is dated July 27, 2001, the neuropsychological also contains observations made during Dr. Miller's treatment of claimant at St. Mary's Hospital on January 23, 2001. (Tr. 556-57).

5

damage was caused by plaintiff's head injury in the June 1996 injury at the racetrack or the February 1997 injury while plaintiff was at work. (Tr. 622-24).

Although the plaintiff argues that pursuant to SSR 83-20 the ALJ should have adopted plaintiff's February 28, 1997 alleged onset date because it was consistent with the record evidence, the Commissioner maintains that the medical evidence shows minimal concern regarding plaintiff's mental functioning, and thus, the plaintiff's alleged onset date is not consistent with the objective medical evidence. Furthermore, the Commissioner maintains that the plaintiff has not identified a single piece of medical evidence to suggest that he had significant mental limitations as of February 28, 1997.

The Commissioner maintains that the ALJ noted the lack of medical evidence documenting significant mental problems before July 27, 2001. (Tr. 271-74). She explains that Drs. Huskey and Killeffer noted no concerns about plaintiff's mental functioning or cognitive abilities from early 1997 through mid-1998 (Tr. 194-201, 228-34); that in October 1998 plaintiff complained of anxiety due to concerns about his inability to work because of his back pain, and although Dr. Huskey prescribed a tranquilizer and renewed the prescription from late 1998 through 2000, he did not refer plaintiff for any mental health treatment and expressed no concerns regarding plaintiff's mental functioning or cognitive abilities (Tr. 192-93, 222, 251, 431-33, 435-37); that in January 1999, consultative psychologist Dr. Nevils examined plaintiff and noted that plaintiff was pleasant, cooperative, spontaneous, coherent, and presented with no evidence of a thought disorder, although Dr. Nevils observed that plaintiff was disoriented to the extent that he did not know the correct day of the month or his correct age (Tr. 202-07); and that in February 1999, state agency physician Dr.

6

Abraham reviewed the record evidence and concluded that plaintiff did not have a listing-level mental impairment and that he retained the ability to perform work involving simple tasks, only superficial contact with the public, and infrequent changes in the workplace. (Tr. 208-19).

Moreover, the Commissioner argues that the medical evidence from early to mid-2001 also supported the ALJ's conclusion that plaintiff was not disabled before July 27, 2001. She points to a January 2001 consultative examination by Dr. Page who reported that plaintiff had an intact mental status, as well as intact recent and remote memory, and no inappropriate speech or behavior (Tr. 394-97); that same month, consultative examiner Dr. Spangler observed that although plaintiff seemed anxious and depressed and frequently needed instructions repeated, he was cooperative, alert, and oriented; displayed adequate recall of remote and current events, recalled three words after a five-minute delay; repeated seven numbers serially, and identified the current president as well as two predecessors and subtracted fives serially (Tr. 389-90); and that in March 2001, plaintiff's treating physician Dr. Huskey provided samples of an antidepressant medication, but did not refer plaintiff for any mental health treatment and expressed no concerns about his cognitive abilities or mental functioning. (Tr. 426-27).

With respect to plaintiff's claim that the ALJ had to "infer" an onset date and thus had to rely on a medical expert to determine when plaintiff's disability began, the Commissioner insists that SSR 83-20 provides that it is sometimes necessary to "infer" an onset date when the alleged onset date is far in the past and "adequate medical records are not available." However, she argues that in the present case, the medical records were adequate and satisfactorily documented plaintiff's mental functioning as of his alleged onset date of disability and thus, the ALJ properly

7

relied on the record medical evidence to establish that plaintiff was not disabled before July 27, 2001.

I find the Commissioner's argument persuasive that substantial evidence supports the ALJ's decision that plaintiff was not disabled before July 27, 2001. Boyes v. Secretary of Health and Human Services, 46 F.3d 510, 512 (6th Cir. 1994) (plaintiff has the burden of proving his entitlement to benefits). Furthermore, as the Commissioner points out, the issue is whether substantial evidence supports the ALJ's finding that plaintiff was not disabled before July 27, 2001, not whether substantial evidence supported an alternative finding. Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989) (the Commissioner's determination of onset date will be upheld if supported by substantial evidence, even if the records arguably support a different date); Miller v. Secretary of Health and Human Services., 843 F.2d 221 (6th Cir. 1988).

SSR 83-20 states in pertinent part:

> Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset **only if it is consistent with the severity of the condition(s) shown by the medical evidence**.

(emphasis added).

I agree with the Commissioner that plaintiff's alleged onset date of February 28, 1997 is not consistent with the objective medical evidence. The ALJ noted that plaintiff was shown to have depression between February 1997 and July 2001, which required accommodation in the

8

workplace, but that he had only moderate limitations of ability to maintain social functioning and to sustain concentration, persistence, or pace. (Tr. 276). Plaintiff's treating physician Dr. Huskey noted plaintiff's complaints of anxiety and depression due to his inability to work, but he did not refer plaintiff for any mental health treatment. (Tr. 192, 426-27) Wilkenson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (a claimant must "present specific medical findings that meet the various tests listed under the description of the applicable impairment"). Instead, he prescribed medication to treat plaintiff's complaints. Similarly, consultative psychological examiners Drs. Nevils, Page, and Spangler, as well as state agency, reviewing psychologist Dr. Abraham, did not find that plaintiff met the requirements for a listing-level mental impairment or indicate that plaintiff's mental impairments were disabling. (Tr. 205, 208-19, 389-90, 396-97) Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420, 1428 (1971) (a written report of a consultant physician who has examined the claimant can constitute substantial evidence); 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").

Based upon the foregoing, it is hereby **RECOMMENDED** that the plaintiff's motion for summary judgment [Doc. 8] be **DENIED** and that the defendant's motion for summary judgment [Doc. 10] be **GRANTED**.[2]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).